If we hear one more case after this, we'll talk to ourselves. Mr. McKay, you may begin when you're ready. My name is James C. McKay. I'm here representing Willie Clay, Mr. Willie Clay, the appellate. We have a number of issues, as your honors know, and we contend that any one of which we should prevail would require remand. Our first contention is that the board and the court committed reversible error by repeatedly ruling that only objective medical evidence will support a claim for service connection. Now those rulings we contend are in violation of the statutes, the applicable statutes, and the regulations of the secretary. And also those rulings were contrary to this court's opinions in Buchanan v. Nicholson and Jandreau v. Nicholson. And I think it's pertinent that in Jandreau, this court said that the rule of Buchanan is particularly important where the service medical records of the veteran have either been lost or destroyed. And that was the situation here, if the court please. Now we're not asking this court to review the board's findings of fact. The facts are undisputed. There are no issues of facts, no credibility issues, only legal issues. And that is whether or not the board and the veterans court violated the applicable statutes and regulations. Well, Mr. McKay, there are two problems or two hurdles that an appellant in your position has to get over. One of them is you can't ask us to review the evidence. I understand that, Your Honor. But you also can't ask us to review how the law is applied to that evidence. That particular case, I understand that. It's very difficult for me to know exactly what it is you can ask us to do under that standard. Other than one thing is clear, and that is if there is a specific statute or regulation that is being challenged because of how you interpret it, the statute, independent of the facts, or a regulation that is challenged because it's inconsistent with the statute, I can grasp the reviewability of that. But in your case, I can't find a statute or a regulation that you are challenging beyond saying that here's a bunch of statutes, and they applied those statutes erroneously to the facts of my case. If that's your position, we can't hear it. Well, Your Honor, the statutes that we claim are misinterpreted are 38 U.S.C. 11454A and 5107B and Regulations 3.303A, 3.307B. Those are the same statutes that were violated in Buchanan and Jandreau. This case is indistinguishable. In those cases, Your Honor's held that lay evidence is perfectly good evidence. Now, they have rejected our lay evidence, the evidence that was given. They didn't give any weight to it. Your Honor, they... Right? They gave no weight at all to it. But the only... They didn't even consider it if the court pleased. The only... As I stated, the board and the court held that only lay evidence will not be considered if it's not supported by medical, objective medical evidence. And that's repeatedly stated both by the board and the court said the same thing. Now, we contend that those violating the statute, they're not only Mr. Clay's statements, which were totally ignored. As a matter of fact, on the basis of, I don't know, I'm referring to Dr. Lundy's and Dr. Liberto's September 2, 1990 opinion, they stated they could not find a service connection. They stated without adequate medical service records, it was not medically possible to assert that the onset of Mr. Clay's mental problems began while he was in the service. That's a failure of evidence, isn't it? Sir? That's a failure of evidence in the record, isn't it? But they say that just as in Buchanan and in Jandro, this court held that because the board had said that the lay evidence that was offered was not supported by medical evidence, by objective medical evidence, it couldn't be considered at all. And the board stated that his available service medical records failed to support his assertions to have experienced multiple episodes of abuse and trauma during the service. They required there to be available service medical records. Now here, they had been lost. There was only one service record, medical record, and that was the discharging court, which is a single-page boilerplate that said nothing. It didn't even begin to say what the board said it said because it said nothing. There was no evidence, medical evidence, but there was this lay evidence, not only from Mr. Clay, but the absence of objective medical evidence was the only basis for the board's and the court's, we say, erroneous rejection of Dr. Liberto's January 11, 1991, opinion and Dr. Conner's opinion. And each of them, Dr. Liberto said that apparently this medical problem began while Mr. Clay was in the service, and Dr. Conner said that the medical problems began while he was in the service, but the only reason that they were rejected was because there was no medical, objective medical evidence to support it. And this is exactly what the court held in Jandrow and Buchanan that was erroneous, and they stepped in back and said lay evidence is, these statutes expressly refer to lay evidence, that lay and medical evidence can be supported, and I urge the court, well, I know that... But aren't you really at bottom complaining that they didn't give the proper weight to the lay evidence? No, they didn't consider it. They said we cannot consider lay evidence because it's not supported by objective medical evidence. Where are you quoting from? Sorry? Where did they say that? Where are you quoting from? This is what... Here's the ruling of Buchanan. No, I don't want the... I want the ruling that this board, that the court... I want the ruling in the opinion we're reviewing. Where did this, where did the Court of Veterans' Appeals say that lay evidence wouldn't be considered? It said it repeatedly, Your Honor. Would you find it for me, please, sir? I mean, I know that's what you read it as saying, but I'm having trouble finding it. I have it here, Your Honor. I couldn't find it. Sorry about that. Well, I don't have it either. Well, there is a reference, I noticed, at the top of page 8 of the CAVC's, the Court of Appeals for Veterans' Claims opinion, that refers to the board's concluding that Mr. Clay had failed to provide competent evidence of relationship between his psychiatric disorder and his active military service, which may suggest that the evidence on which he relied, which included lay evidence, was deemed to be not competent and therefore not admissible, as opposed to outweighed by other evidence. So I suppose that may be something that could be cited as supporting the view that this was excluded evidence. Yeah. Well, the Court refers to... But I believe that's a reference to what the board concluded rather than to what the Court of Appeals concluded, and we're reviewing the Court of Appeals, I believe. Well, both Dr. Conner's rationale for his March 1991 opinion, this is at 968, the board is that since his assertion was not supported by objective medical evidence, and it's repeatedly, Your Honor, here Dr. Liberto, significantly the record shows that Dr. Liberto revised his opinion, and he had based his earlier opinion on the veterans' own self-reported testimony, and was not based on review of objective medical evidence or medical records. It's repeated a number of times, Your Honor, where both the court and the board ruled that any lay evidence that was not supported by objective medical evidence would not be heard. And I was going to read you the book, Buchanan. In Buchanan, the board had determined that lay evidence without confirmatory documentary evidence cannot be credible, and the Veterans Court affirmed. We reversed, holding that numerous veteran statutes and regulations require consideration of lay evidence. We concluded that lay evidence is one type of evidence that must be considered, and that competent lay evidence can be sufficient in and of itself. Now, there was this lay evidence. There was the lay evidence that repeatedly throughout the statements that Mr. Clay submitted to the VA, and as I said before, the only basis for the rejection of Dr. Connors and Dr. Liberto's opinions was that they were not supported by objective medical evidence. And again, there's no issue of fact in that respect, if the court please. And we believe that this has to be sent back for no other reason than for the reason that it violated not only the statutes which I have referred to, but also it violated this court's decision in Buchanan and this court's decision in Jandro. Now, we also, Your Honor, point out that on several occasions in the court's opinion and in the board, Dr. Liberto's and Dr. Connors' opinions were rejected for the reason that they were based solely on Mr. Clay's oral statements. Now, I do have that at JA, JA 8, and at JA 968, and those rulings were in conflict with decisions of the Veterans Court of Appeals most recently in Kowalski v. Nicholson at 19 Vedat 171, which held that a medical opinion based solely on a veteran's oral statement can support a claim for service connection. Here, this was totally rejected, and Mr. Clay's statements as well as Dr. Connors' opinion and Dr. Liberto's first opinion. Your Honor, we also argue that the board in the Veterans Court erred in misinterpreting 5107B by their failure to find that the affirmative evidence supporting Mr. Clay's claim for service connection was inequipoise with the negative evidence, or at least inequipoise. Now, 5017B expressly requires the board to consider all information and lay medical evidence of record, but the board's finding in this case that the preponderance of the evidence was against the claim cannot stand in view of the fact that the board refused to consider substantial affirmative positive evidence, both lay and medical. On the erroneous ground that they were not supported by objective medical evidence, I refer again to Mr. Clay's statements and the opinions of Dr. Liberto and Dr. Conner. Now, the board may not claim adherence to 5107B that all the evidence be considered by considering admissible positive evidence to be weightless evidence, and moreover, the board in court completely failed to consider the medical opinion of Dr. Charles Small that Mr. Clay's first schizophrenic break occurred while he was in the Navy. They just ignored it altogether, and obviously that opinion must weigh in Mr. Clay's favor. Now, Mr. Clay was criticized by the court and the board and the secretary for not obtaining still another medical opinion. Now, we think that that criticism is especially unfair in light of the board and the court's refusal to consider Mr. Small's opinion at all, and the repeated erroneous statements that a medical opinion would not support a claim for service connection if it's not supported by objective medical evidence. Now, Mr. McKay, you're into your rebuttal time. Would you like to save the remainder of your rebuttal time? I do have a couple of more points, Your Honor. Well, if you could make them quickly, we'll give you a couple of minutes of rebuttal. We also have argued that this court has jurisdiction for the separate reason that the court and the board implicitly violated 5107B by paying only lip service to the legal requirement that a claim be denied only if the evidence preponderates against the claim. And we also argue at some length that the secretary should have been adequately stopped. We have that in your brief. I think that's fully briefed. Thank you, Mr. McKay. Ms. Snedford. Ms. Snedford. Thank you. Mr. Clay's case here improperly requests this court to reweigh the evidence that the board and the Court of Veterans' Appeals has already weighed, and in so doing, requests this court to make a decision beyond the grant of jurisdiction that this court has. Mr. Clay does not identify a statute that was misinterpreted by the Court of Veterans' Appeals. He merely objects to the manner in which the applicable statutes were applied to the facts. Well, if I understand Mr. McKay correctly, he is suggesting rather strongly that the Court of Appeals misread our precedents with regard to the use of lay evidence to prove medical causation and that the Board of Appeals and the Veterans' Court both refused to give credence to the lay testimony of Mr. Clay, which is inconsistent with our precedents, isn't it, if that's what they did? If that's what they did, no. Is that what they did? No, Your Honor. It's not. And that's the actual language from the board's, from the Court of Veterans' Appeals' opinion belies that conclusion. At the top of page 7 of the court's actual opinion, the court refers back to the board's opinion. And the board further noted that Mr. Clay himself said when he was diagnosed with a psychiatric disorder in 1983 that he related that to an incident with a law enforcement officer, not to his military service. I'm sorry. Were you in the board's opinion or the court's opinion? It's the court's opinion. He's referring to the board. Referring to the board. Yes. Go ahead. And so it's clear there that the court and the board did, in fact, consider Mr. Clay's own evidence and, in fact, requested, because that only brought it back to 1983, which was the conclusion of the doctor's, some 10 years after he was discharged from the service, and requested Dr. Conner, his personal physician, and the doctor on whose opinion Mr. Clay wants to rely here, for a finding of a service connection for a psychiatric disorder. The board requested Dr. Conner to provide additional records, additional materials, to explain how the 1983 date wasn't the beginning, wasn't the onset of the psychiatric disorder. And Dr. Conner refused to do so. But, again, that's simply a failure of evidence. It's not that Mr. Clay, his own evidence was disregarded. The board and the court simply considered it insufficient. And that's within their authority to do. And it's beyond the authority of this court to review that. But isn't there some problem in this case because Mr. Clay, Mr. Clay's records were apparently lost by the VA somewhere in the system. And so he was put at a considerable disadvantage in being able to establish service connection for his disability. And what else could he use but his own oral testimony? The records began, the medical records began in 1983, apparently. Yes. And the records before that, I take it, were lost, but not to any fault of Mr. Clay. What is he supposed to do? Well, his service records, I believe, I mean, Dr. Conner is a civilian doctor. That's his personal position. And his records, I don't know if they were lost or not, but that's his. There's something in the record that indicates that they were lost. The VA said. Yes, the VA's records were apparently lost. Were apparently lost. They were transmitted to the VA, but nobody can find them. Apparently, yes. Unfortunately, that appears to be what happened. Doesn't that put some, isn't there some statute then that we can find has been violated for Mr. Clay? No, Your Honor, that exact situation has been encountered many times. Because of the fire. Yes, the famous 1973 fire. And, in fact, the Jander case that was recently issued discussed that exact situation. And so Jander now stands for the proposition citing the Cromer v. Nicholson case that in the event that a serviceman's records are lost, it's unfortunate, but it doesn't change his burden of proof. And if what that leaves him with is his own testimony, his own ability to describe his medical conditions, then that's all he has. And if that's insufficient, if that doesn't meet the burden, his burden of proof, then there's nothing that can be done. Because it doesn't, those, Jander and Cromer before both stand for the proposition that it doesn't, the failure of the absence of records doesn't change the claimant's burden of proof. Are we reviewing the Board or are we reviewing the Court of Appeals?  What do we do if the Board opinion seems to say we don't consider lay testimony, which would be inconsistent with our precedents unless they're backed up by medical records, but the Court's opinion isn't very clear on how it came out on that issue? What do we do then? If in this situation, in order for this Court to have any authority, obviously this Court can't review the Board's findings of fact. And the Court of Veterans' Appeals is entitled to view those findings as it will, so unless there's some error of law, and not simply an application of law to the facts as the Board found them, there's really nothing that this Court can do. But I think I recall some cases, and I can't bring them to mind, certainly not by name or citation, but I think there are some cases in which we have said where the Board does something, which is, let's say by hypothesis, plainly contrary to a statute or regulation, and the Court of Appeals or Veterans' Claims simply affirms what the Board has done without comment, but it's clear that they have necessarily adopted the same position with respect to that issue, otherwise they couldn't have affirmed it. We regard that as giving us jurisdiction. You probably know these cases better than I do, but I take it that's the state of the law, is it not? Yes, Your Honor, I think that's correct, because that becomes the Court's own error of law, mistake of law. Well, at least for purposes of that case. It may not bind them in the stare decisis sense, but for purposes of our jurisdiction, it's enough, I think we say. Yes, I think that's correct, but neither the Board nor the Court here committed any legal error. It is simply not the case that the lay evidence was not considered. And the Board discussed it, and the Court discussed the Board's discussion of it. If you look in the appendix at 8, is that what you're relying on, where the Board discusses at the bottom of 8, where the Court refers to the Board's weighing of the evidence, including Dr. Conner, and rejecting it based solely on Mr. Clay's own statement? And it goes on, the Board noted that it was not required to accept the doctor's opinion based on a claimant's recitation of medical history. Are we getting into a circular argument where it's the only evidence Dr. Conner had to go on because there were no records from the VA? Well, but Dr. Conner's been in Mr. Clay's personal position since, at least apparently since 1975, so he would have his own records, it would seem to me. And if he doesn't have them, then... And that's what Dr. Conner had the opportunity to present, but didn't? That's correct. He was specifically requested to provide additional records. And does that failure of Dr. Conner's to do that fall on the Board? No, it does not. I would also note that while it's true that the Court is required to consider lay evidence, and in some cases lay evidence may be sufficient to support a finding, to support a medical diagnosis, that's not always the case. In the Jandro case in footnote 4 of the Jandro opinion, this Court noted that lay evidence may not be competent in all cases. I think it used the example of if it's a broken leg, then that's something a lay person, a lay opinion, lay evidence as to that. At least a compound fracture. At least a compound fracture, it's pretty easy. Jandro, I think, was a dislocated shoulder. Yeah, it's not very hard to tell. But in this case, a psychiatric disorder would be seemingly a very difficult thing for a lay person to diagnose accurately. But any doctor attempting to diagnose a psychiatric disorder would necessarily have to rely on lay evidence, the own recounting by the patient of the event. He might also talk to third parties if he chose to do so, but it would be extraordinary if the doctor didn't at least look at lay evidence in attempting to rule out other problems and arrive at a diagnosis, correct? Yes, that's correct. For these reasons, Your Honor, we request that you affirm the decision of the Court of Education Appeals. Thank you. Thank you. Mr. McKay. Mr. Connell, thank you. Court, please. As far as Dr. Conner being asked to submit more evidence, he didn't do it. And I argue that he did. And you'll see there are a number of places in the Joint Appendix, at least a half a dozen, which shows that Dr. Conner did submit additional information. His opinion is straightforward. He had been Mr. Clay's family physician since Mr. Clay was an infant. He knew him before the war and after the war, immediately after the war. He was in the perfect position to be able to determine and make a diagnosis. Now, it just seems to us that to just brush Dr. Conner's opinion aside, just because there are no objective medical evidence to support it, doesn't make sense to me. He had all the opportunity there were to observe Mr. Clay, as did Dr. LaBerga, who treated him for three years, had therapy sessions with him. And then he says, oh, my eight years later, he says, oh, I can't. What I said eight years ago, that was only based upon his oral statements. But he said it, and as of January 1991, he said that this man's problems began, apparently, while he was in the service. And there that opinion stands. And he's not a judge. He can't say just because it was based upon oral statements that it's no good. He said it based upon three years of therapy sessions with Mr. Clay, and now he tries to back off of it eight years later by saying, well, that was only based upon his oral statements. But that says nothing. I also want to point out that 966, the board said, as noted, the Veterans Available Service medical records failed to support his assertions of having experienced multiple episodes of abuse and trauma during the service. Now, and the court said, further, the board stated that Mr. Clay had failed to submit a medical opinion based on a review of the medical records in support of his assertion that his psychiatric disorder began in service. And that's part of my argument of the implicitly, this constantly used, Mr. Clay asserted, you know, and it's always the whole thrust of this board's opinion is anti-Clay. And every fact is slanted against him. The cases they cite don't stand for what they say. And it just seems to me that the whole situation, as far as that goes, indicates that the board's opinion was slanted against Mr. Clay. That's another argument. But we urge that the court, for one or all of these reasons, remain. Thank you, Mr. Clay. The case is submitted. All rise.